IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| In Re *Ex Parte* Application of Saad Khalid S. Aljabri,<br><br>　　　　　　　Applicant,<br><br>for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in a Foreign Proceeding | Case No. 25-mc-00022 |

**STATEMENT OF INTEREST OF THE UNITED STATES**

Pursuant to 28 U.S.C. § 517,[1] the United States respectfully submits this Statement of Interest to urge the Court to deny the *ex parte* application filed under 28 U.S.C. § 1782, seeking to compel the testimony of former U.S. Government officials for use in a foreign proceeding. As the Applicant admits, "the information sought is within the scope of the state secrets privilege previously asserted by the United States" and fully litigated. Mem. of Law. in Supp. of Dr. Saad Aljabri's *Ex Parte* App. for an Ord. Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in a Foreign Proceeding at 2 (ECF 1-1); *see also Sakab Saudi Holding Co. v. Aljabri*, 578 F. Supp. 3d 140 (D. Mass. 2021), *aff'd*, 58 F.4th 585 (1st Cir. 2023). Although the United States may intervene to raise other objections if the Court were to grant the application and order the issuance of subpoenas, the Court can readily deny the application on the grounds that the Government's validly asserted state secrets privilege is a "legally applicable privilege" within the meaning of § 1782(a). That provision provides that "[a] person may not be compelled to give his testimony … in violation of any legally

---

[1] Section 517 provides that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

1

applicable privilege." 28 U.S.C. § 1782(a). Indeed, Supreme Court precedent leaves no doubt that the application must be denied. *United States v. Zubaydah*, 595 U.S. 195, 214 (2022) (remanding to district court to dismiss § 1782 application because the requested discovery is blocked by the Government's validly asserted state secrets privilege).

## BACKGROUND

The Applicant, Saad Khalid S. Aljabri ("Aljabri"), is a former official of the Kingdom of Saudi Arabia, who has been sued in the Superior Court of Justice in Ontario, Canada by Sakab Saudi Holding Company ("Sakab"), an entity established and funded by the Kingdom of Saudi Arabia to conduct anti-terrorism activities. *Sakab*, 58 F.4th at 589. Sakab sued to recover billions of dollars Aljabri allegedly defrauded from Sakab using a variety of payments and transfers. *Id.* Aljabri has denied any wrongdoing, insisting that "the funds were received lawfully in connection with clandestine counterterrorism and national security operations that sometimes were undertaken alongside the United States government." *Id.* at 588.

Sakab has attempted to freeze Aljabri's assets worldwide. *Id.* at 589. To that end, in 2021 Sakab sued in the U.S. District Court for the District of Massachusetts to freeze properties purchased by Aljabri and located in Massachusetts. *Id.* The United States intervened in that case to assert the state secrets privilege and a statutory privilege pursuant to 50 U.S.C. § 3024(i)(1), explaining that the disclosure of certain categories of information "reasonably could be expected to cause serious, and in some cases exceptionally grave, damage to the national security of the United States." *Sakab*, 58 F.4th at 591. In asking the court to excise the privileged information, the United States took no position on whether any aspect of the case should be dismissed. *Id.* at 591. The court determined that the United States had validly asserted the privilege and ultimately dismissed the case—which the First Circuit affirmed—because "the privileged information was so central to that case that any attempt to proceed with the litigation would unduly risk disclosure and thereby

compromise national security." *Id.* at 598.

As the First Circuit explained, "adjudicating the nature of th[e] transactions" at issue would require "evidence about Aljabri's role and relationships with U.S. agencies, the degree of Aljabri's authority, how he participated in the programs and operations, who else was involved, the existence and execution of the operations themselves, who authorized and paid for them, and who then directed payment to or through Aljabri." *Id.* at 598. "All of this," the First Circuit explained, "is suffused with sensitive information," and any discovery of it would "risk[] disclosure of information that has been swept into oblivion by the incredibly broad privilege assertion." *Id.* Indeed, the "wide swath of information," *id.* at 598, covered by the privilege includes

> information concerning sources, methods, capabilities, activities, or interests of the [U.S. Intelligence Community], as well as information that might tend to reveal or disclose the identities of U.S. Government employees, affiliates, or offices with whom one or more of the parties or the Kingdom of Saudi Arabia may have had certain interactions and the disclosure of which would be damaging to U.S. national security interests[.]"

*Id.* at 591 (brackets in original) (quoting the declaration of the Director of National Intelligence).

With the trial in the Canadian proceeding scheduled to begin in March 2026, Aljabri obtained an order from the Canadian court authorizing him to seek the testimony of certain former "U.S. security officials" to help corroborate Aljabri's defense. ECF 1-1 at 1. Anticipating Aljabri's filing of a § 1782 application in this Court and concerned that the application could contain classified information, the United States requested to review the draft application. *Id.* at 2. Thereafter, the United States informed counsel for Aljabri that the proposed application contained classified information that must be excised from a public filing, *id.* at 2, and further that the information Aljabri seeks is subject to the previously asserted state secrets privilege, *see id.,* Ex. A to Hipp Decl. Thereafter, Aljabri filed the instant application, which does not contain any classified information.

Crucially, in the application, Aljabri concedes that "the information sought is within the scope of the state secrets privilege previously asserted by the United States." *Id.* at 5. Nevertheless, he

3

maintains that this Court nonetheless should compel the information because, among other things, "Dr. Saad has a significant need for the information to defend himself in accordance with the Canadian court's order authorizing the testimony." *Id.* at 5.

## DISCUSSION

The United States submits this Statement of Interest because it has a strong interest in protecting against the disclosure of classified information. *See* Exec. Order 13526, 75 Fed. Reg. 707 (2010) ("[T]hroughout our history, the national defense has required that certain information be maintained in confidence in order to protect our citizens, our democratic institutions, our homeland security, and our interactions with foreign nations."). Here, 28 U.S.C. § 1782(a) clearly does not permit the disclosure of the information Aljabri seeks in his application.

Section 1782(a) provides that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." There is no dispute that the information Aljbari seeks is within the scope of the state secrets privilege previously asserted by the United States in the Massachusetts case. Yet, he maintains the Court nevertheless should grant his application because it is an open question whether the state secrets privilege qualifies as a "legally applicable privilege" within the meaning of 28 U.S.C. § 1782(a) and whether U.S. or Canadian law governs the invocation of the privilege. Aljabri is incorrect.

First, the state secrets privilege clearly is a "legally applicable privilege" within the meaning of the statute. The "legally applicable privilege" language is meant to expansive because the "legislative history [of § 1782] makes clear that ... [the 'language] 'provides for the recognition of all privileges to which the person may be entitled, including privileges recognized by foreign law.'" *In re Erato*, 2 F.3d 11, 14 (2d Cir. 1993) (quoting S. Rep. No. 1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3790). Moreover, the plain meaning of the statute offers no basis to

4

treat the state secrets privilege differently from other privileges. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-41 (1989) (the sole function of the courts is to enforce the statute according to its terms); *cf. Al Fayed v. United States*, 210 F.3d 421, 425 (4th Cir. 2000) ("Congress's salutary purposes in enacting § 1782 simply do not anticipate the issuance of a subpoena for documents whose disclosure would be likely to harm the national security.").

In any event, the Supreme Court's decision in *United States v. Zubaydah*, 595 U.S. 195, 214 (2022), leaves no doubt that a valid assertion of the privilege requires denial of a § 1782 application. In *Zubaydah*, a detainee in the Guantánamo Bay Naval Base filed an *ex parte* § 1782 motion seeking to subpoena two former Central Intelligence Agency ("CIA") contractors. The United States intervened to move to quash the subpoenas based on the state secrets privilege and the district court granted the motion to quash. *Id.* at 203. On appeal, the Ninth Circuit mostly accepted the Government's claim of privilege but found that the privilege did not cover information about a CIA detention site where the detainee was once held. *Id.* at 199. The Supreme Court reversed, concluding that the Government had provided sufficient support for its claim of harm to warrant application of the privilege. *Id.* at 207-12. The Supreme Court then remanded with instructions to dismiss the § 1782 application because "the [state secrets] privilege block[ed] Zubaydah's discovery requests, which are the [§ 1782] proceeding's sole object." *Id.* at 214.

In light of the Supreme Court ruling in *Zubaydah*, there is no basis to argue that the state secrets privilege is not a "legally applicable privilege" within the meaning of § 1782. In fact, this is an easier case than *Zubaydah* because there is no dispute that the information Aljabri seeks falls within a fully litigated and validly asserted state secrets privilege. Therefore, Aljabri's application must be denied on that basis alone.

Second, Aljabri's suggestion that Canadian law governs the applicability of state secrets privilege has no merit. In *Zubaydah*, neither the Supreme Court nor the lower courts engaged in

any choice-of-law analysis in determining whether an applicant for information for use in foreign tribunal pursuant to § 1782 was entitled to information protected by the state secrets privilege. *See generally Zubaydah*, 595 U.S. 195; *Husayn v. Mitchell*, 938 F.3d 1123 (9th Cir. 2019); *In re Zayn Al-Abidin Muhammad Husayn*, No. 2:17-CV-0171-JLQ, 2018 WL 11150135 (E.D. Wash. Feb. 21, 2018).

Nor is the "touch base" test employed in the Second Circuit helpful to Aljabri. ECF 1-1 at 5-6 (citing *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 99 (2d Cir. 2020)). "Under the touch base test, a court applies the law of the country that has the predominant or the most direct and compelling interest in whether communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." *Mangouras*, 980 F.3d at 99. *Mangouras* itself involved a § 1782 application for discovery concerning a shipwreck off the coast of Spain, and upon determining that the district court should have applied the "touch base" test, the Second Circuit remanded to determine whether Spanish privilege law was a legally applicable privilege under § 1782. Here, even if the "touch base" test applied, the state secrets privilege would still bar the application because the United States has a predominant, direct and compelling interest in protecting against the disclosure of classified information by its former employees who acquired the information within the scope of their employment. *Cf. Zubaydah*, 595 U.S. at 967 ("[E]ven the most compelling necessity cannot overcome the claim of [state secrets] privilege if the court is ultimately satisfied that [state] secrets are at stake." (citation omitted)). Canada, in contrast, can claim no greater interest in the United States' classified information; indeed, Sakab brought suit in Canada only because Aljabri is exiled there. And even if this Court were to find that Canada somehow has a greater interest in the requested information, principles of comity would be offended if Canadian privilege law could overcome the United States' assertion of the state secrets privilege. *See, e.g., In re B&C KB Holding GmbH,* No. 22-MC-00180, 2025 WL 1802956, *5, *8

(S.D.N.Y. July 1, 2025) (applying the touch base test to find Germany had a predominate interest of the documents at issue but ultimately applying U.S. privilege law because application of German privilege law would offend principles of comity). In sum, even if the Court were to apply the Second Circuit's "touch base" test, the outcome is the same.

## CONCLUSION

For the foregoing reasons, the United States respectfully urges the Court to deny Aljabri's § 1782 petition. The United States reserves the right to intervene to quash any subpoenas issued pursuant to a grant of the application and to raise other objections beyond the applicability of the state secrets privilege.

Dated: October 28, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

JEAN LIN
Special Litigation Counsel, Federal Programs Branch

/s/ *Ryan Underwood*
RYAN UNDERWOOD
Trial Attorney (D.C. Bar No. 1656505)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-1952
E-mail: ryan.m.underwood2@usdoj.gov

*Counsel for the United States*